UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,        Case No. 2:10-20545

vs.               HON. DAVID M. LAWSON

TYRONE RICHARD WATKINS,

    Defendant.
_____

**MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(I)**

  WHEREFORE Defendant Tyrone Richard Watkins, through his counsel moves this Court to grant him compassionate release for the following reasons:

1. Mr. Watkins is a 45 year old inmate at FCI Milan with significant health concerns including heart problems and high blood pressure.

2. Mr. Watkins has currently served roughly 60 percent of his sentence for armed robbery.

3. Mr. Watkins was a Criminal History I when he pled guilty; he has since become a model prisoner and reformed himself to the point that he has gained the trust of the BOP.

4. Currently there is an international pandemic involving the COVID-19 virus; prisons are hotbeds for infection.

5. This leaves Mr. Watkins especially vulnerable to serious illness or death from the COVID 19 virus.

6. Thus it is clear that there are extraordinary circumstances that warrant

compassionate release.

7. Mr. Watkins's personal and prison history indicate he will not be a threat to the community.

8. The 18 U.S.C. 3553(a) factors also favor release as Mr. Watkins has support from his family, a placement plan, and appears to have been reformed during his time in the Bureau of Prisons.

Wherefore, Mr. Watkins respectfully asks that the Court grant his Motion for Compassionate Relief.

Respectfully Submitted,

**SMITH MIHAS PLLC**

/s/ Haralambos D. Mihas
Haralambos D. Mihas, P66417
Attorney for Tyrone Watkins
467 Eureka Road, Suite 1
Wyandotte, Michigan 48192
(734) 692-3033
hdmihas@smithmihas.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                       Case No. 2:10-20545

vs.                                        HON. DAVID M. LAWSON

TYRONE RICHARD WATKINS,

        Defendant.

_____

### **DEFENDANT'S BRIEF IN SUPPORT OF HIS MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

      The last time Mr. Watkins appeared in court, he was at a crossroads in life. He was already imprisoned by addictions to cocaine and marijuana. He faced 240 months of confinement in the Bureau of Prisons for bank robberies that he used to pay for his addictions. He had lost his job, his wife and children, and his freedom. The steps he has taken since indicate Mr. Watkins has transformed himself. His fear now is the Covid-19 virus could become a death sentence because of the medical conditions that he has. For the reasons below, he asks that this Court grant him compassionate release.

### **FACTUAL BACKGROUND**

      The threat that SARS-CoV-2 (the "COVID-19 virus) poses is well-documented in this court and throughout the world. Since late 2019, over 500,000 people throughout the world have died from the virus. Over 128,000 of the people were American citizens. (Exhibit 1, https://www.worldometers.info/coronavirus/coronavirus-death-toll/) The virus can leave a person with fever, shortness of breath, and a dry cough. For those who have compromised immune systems and other health conditions, it can kill them.

### A. Defendant's History and Progress in the Bureau of Prisons

Mr. Watkins finds himself especially vulnerable, mostly as a result of his choices and actions. Between July 10 and August 20, 2010, Mr. Watkins robbed five banks at gunpoint. (ECF 18, Plea Agreement, 5/2/2011) His actions were out of character. He was a Criminal History I at the time, with a prior drug conviction that resulted in a sentence of less than 90 days. He had a job, a home, a wife and two small children. He also had an addiction to crack cocaine that twisted his values and led to criminal actions.

His arrest was the wake up call Mr. Watkins needed. Mr. Watkins' first step to reforming himself was to take responsibility for his actions. He pled guilty on May 2, 2011 and was sentenced on October 31, 2010. (ECF 18, Plea Agreement; ECF 21, Judgment) Guidelines calculations recommended 97 to 121 months in prison, with a mandatory consecutive term of 84 months. (PSR at ¶ 108) However, Mr. Watkins agreed to an upward variance and a sentence of 240 months. (ECF 18, Plea Agreement at 7-8)

Since then Mr. Watkins has been a model inmate. He is classified a minimum security risk and has been placed in a preferred housing unit (H-block) at Milan FCI. Mr. Watkins works two jobs. He makes 30 cents an hour at Unicor, an on site factory and is a member of the suicide cadre, a corps of inmates who assist prison psychologists in identifying and treating suicidal inmates. (Exhibit 2, Individualized Education Data) Although he is ineligible for R-DAP drug treatment, Mr. Watkins addressed his drug addictions with a 40-hour drug abuse class, and cognitive behavior classes. (Id.) In fact, he has educated himself with almost 90 classes and is eligible to enroll in Milan's Jackson College program. (Id) Mr. Watkins also leads the prison choir. (Exhibit 3, Prison Choir) His

record is free of any disciplinary history. He has a release date set for September 17, 2027. Mr. Watkins filed his request for relief with the warden on May 20, 2020, but has not received a response.

### B. Medical Background

Overall, Mr. Watkins has good health, but has concerns that leave him vulnerable to serious consequences from the COVID-19 virus. He is a 45 year old African American male, who is overweight, has hypertension, and low potassium levels. Mr. Watkins also takes Amlodipine to address coronary artery disease. Although Mr. Watkins is 45 years old, the government acknowledges that aging in prison is different than aging outside a prison. The Office of the Inspector General (OIG) acknowledges that "an inmate's physiological age averages 10-15 years older than his or her chronological age," due partly to the "stresses associated with incarceration." (See Exhibit 4, Office of the Inspector General, The Impact of an Aging Inmate Populate on the Federal Bureau of Prisons at 1-2 (Feb. 2016)) The impact of prison on an inmate cannot be discounted. Although the CDC indicates 60 years old as a rough estimate of age related vulnerability to COVID-19, the impact of life in prison puts Mr. Watkins within that danger zone.

## ARGUMENT

Under Section 3582(c)(1)(A), the defendant may move for a reduction of sentence after either (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of [a request to the Bureau of Prisons to bring a motion on the defendant's behalf] by the warden of the defendant's facility," whichever is earlier. The court may reduce a sentence under Section 3582(c)(1)(A) "if it finds that

extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Court must "also consider[] the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable." 18 U.S.C. §3582(C)(1)(A); *United States v. Snell,* No. 16-20222 (E.D.Mich 6/2/2020, J.Tarnow)

### A.     Exhaustion of Administrative Relief

More than 30 days have passed since Mr. Watkins asked for administrative relief on May 16 and May 23, 2020. (See Exhibit 5, Requests for Administrative Release) There has been no response.  This falls in line with the pattern and practice in Milan.  In *United States v. Jeffrey Snell*, the government acknowledges that deference to the BOP administrative process at Milan FCI is futile.  The FCI Milan warden has shown unequivocal opposition to compassionate release requests in 2020 despite the COVID-19 crisis and policy statements from the United States Attorney General, William Barr.[1]  As of May 29, 2020, the Milan warden has denied 235 requests for relief and has refused to grant any this year. *See United States v. Snell,* No. 16-20222, (ECF 422 - Government Submission of Supplemental Records in Response to Court May 14, 2020 Order)(E.D. Mich, 6/2/2020)

The history of the Milan warden implies that the notice requirement is in reality a 30-day delay to filing, and not deference to BOP decision makers.  Congress's intent was for a defendant to have meaningful access to the judiciary and prompt decision of whether he should be released.  *United States v. Haney,* No. 19-cr-541(JSR), 2020 U.S. Dis. LEXIS 63971, at *8-9 (S.D.N.Y. April 14, 2020).  The demonstrated refusal of the Milan warden

---

[1]Exhibit 5, William Barr, Memorandum to the Director of the Federal Bureau of Prisons, March 26, 2020 (instructing the BOP to use its statutory authorities including compassionate release and home confinement to protect inmates especially susceptible to complications and serious illness or death from the COVID-19 virus).

to grant compassionate release requests is nothing more than an impediment to judicial review at a time when meaningful and prompt determinations can be the difference between life and death. As noted in *United States v. Atwi,* involving another Milan inmate, "30 days when the [compassionate release] statute was passed and 30 days in the world of COVID-19 are different." *Atwi,* No. 18-20607, 2020 U.S. Dist. LEXIS 68282, at *9 (E.D.Mich., April 20, 2020)(Michealson, J) Mr. Watkins asks that the Court find the 30 day requirement has been met.

      **B.**    **Compelling and Extraordinary Circumstance Necessitate Relief**

"To determine what the Sentencing Commission considers 'extraordinary and compelling,' the Court turns to United States Sentencing Guidelines § 1B1.13." *United States v. Cantu*, 423 F. Supp. 3d 345, 349 (S.D. Tex. 2019) (citing 28 U.S.C. §994(t)). "However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act, and consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. §3582, as amended." *United States v. Perdigao,* No. 07-103, 2020 WL 1672322, at *2 (E.D. La, April 2, 2020)

"[T]his discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act." *Id*. (citation omitted). "While the old policy statement provides helpful guidance," *United States v. Beck*, 425 F.Supp.3d 573 (M.D.N.C. 2019), numerous other courts who have ruled on this issue have held that they have the "discretion to determine what constitutes an 'extraordinary and compelling reason[]' on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive," *Perdigao*, 2020 WL 1672322, at *2 (citation omitted); *see also United States v. Haynes*, No. 93 CR 1043 (RJD),

2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020).

The numbers are staggering. There have been more than 2.6 million cases of COVID-19 and over 128,000 deaths in the United States alone.  However, the worst may not be over. States may have loosened COVID-19 precautions too early. Hospitals are at or near capacity. At least six states are reporting record numbers of new COVID-19 cases. 20 more states are seeing increases in COVID-19 infections.[2]

The conditions in prisons by nature of their purpose create a petri dish for infectious diseases.  Inmates have little, if any, access to cleaning products to sanitize their environment.  Personal protection equipment such as masks and gloves are difficult to find. There is no way for inmates to practice social distancing.  Accordingly, "jails and prisons are powder kegs for infection" and "[r]ealistically the best - perhaps the only - way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible." *United States v. Skelos,* No. 15-cr-317(KMW), 2020 U.S.Dist. LEXIS 64639, at *4 (S.D.N.Y. 2020)(quoting *United States v. Nkanga,* No. 18-cr-713, 2020 U.S.Dist. LEXIS 56188, at *1 (S.D.N.Y. March 31, 2020).

Although the BOP has publicly attempted to mitigate the spread of the virus, it is clear that the measures are failing.  In an Imminent Danger complaint filed with the Occupational Safety and Health Administration, BOP guards allege the Agency has

> authorized movement of infected inmates, inmates suspected of being infected, inmates who have been in close contact or proximity to infected inmates, areas of the Country that do not have any rate of infections, or to Institutions that otherwise have not shown signs of any introduction of the virus, thus introducing the virus into an uninfected area.

---

[2]https://www.healthline.com/health-news/covid19-cases-rising-states-reopened

See Exhibit 6, OSHA Complaint.

Those complaints seem to have fallen on deaf ears at Milan FCI. In an article dated May 4, 2020, a BOP officer at Milan claims he was told to immediately return to work, after learning he contracted the COVID-19 virus. On another occasion, a staff member was denied personal protection equipment, despite asking for a mask while attending to a sick inmate. At the time of the allegations were, 40 inmates and 50 staff members were official diagnosed. (Exhibit 7  https://www.afge.org/article/a-bop-officer-contracted-coronavirus. -he-was-told-to-return-to-work-asap/)[3]

Housed in a prison where it appears as though the warden does not take the COVID-19 virus seriously, Mr. Watkins fears that his underlying conditions making him especially vulnerable to dangerous complications that could leave him seriously ill or dead. Mr. Watkins is medicated for high blood pressure and coronary artery disease. (See https://www.webmd.com/lung/coronavirus-high-blood-pressure#1) Both conditions are considered underlying conditions that make him especially vulnerable to the worst effects of the COVID-19 virus . Further, it has been found that COVID-19 lowers potassium levels. For those who already suffer from low potassium, COVID-19 can further level potassium levels. Researchers believe that as a result, the decreased levels of potassium can result in result in slowed heart rates and cardiac arrest in COVID-19 patients. (Exhibit 8 - https://www.thailandmedical.news/news/covid-19-research-updates-chinese-study-reveals-that-hypokalemia-present-in-almost-all-covid-19-patients)  *See, e.g., United States v. Saad,* No. 16-20197 (E.D. Mich. April 21, 2020)(Hood, J); *Miller v. United States,* 17-

---

[3]See also https://www.themarshallproject.org/2020/06/18/i-begged-them-to-let-me-die-how-federal-prisons-became-coronavirus-death-traps

20222, 2020 WL 1814084, at *3 (E.D. Mich, April 9, 2020); *United States v. Perez,* No. 17-cr-513, 2020 WL 1546422, at *4 (S.D.N.Y., April 1, 2020). If Mr. Watkins contracts the COVID-19 virus, the consequences could be deadly, something that the Court never intended when it sentenced Mr. Watkins.

### C. Section 3553(a) factors advise the Court to grant compassionate release.

A defendant seeking compassionate release must also demonstrate that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13. "Section 3142(g) requires the court to consider factors such as the nature and circumstances of the charged offense, the history and characteristic of the defendant, and the nature of seriousness of the danger to a person or the community at large posed by the defendant's release." *Perdigao*, 2020 WL 1672322, at *2 (citing 18 U.S.C. § 3142(g).

There is no doubt that the crimes committed by Mr. Watkins are serious. Lives were endangered by his actions. His actions showed callous disregard for the law. It is clear that the sentence imposed was intended to reflect the seriousness of the crime and impose a just punishment. 18 U.S.C. §3553(a)(2)(A). However, the seriousness of the crimes, even violent crimes, are not determinative in the review of a motion for compassionate release. The sentence was also intended to provide deterrence and rehabilitation for Mr. Watkins, and it has worked.

As a whole, Mr. Watkins's crimes were an anomaly. His prior criminal history was minimal and was scored a Category I. Since then his rehabilitation has been exemplary. Mr. Watkins has earned the trust of the BOP. He has been placed in preferred housing in a low-security environment. He maintains two jobs, the first as a factory worker in

Unicor, and the second as an aide who helps suicidal inmates. Mr. Watkins volunteers to lead the prison choir. He has taken advantage of almost every educational opportunity the BOP has to offer, including the GED program and drug education.

Mr. Watkins' record in prison should assure the Court that he no longer poses a threat to the public. He has used his time in prison to not only reform himself, but to also better himself in preparation for re-entry into society. He has his family's support and several options for housing, including his wife and children in Detroit, his mother in Detroit, and his father in Farmington Hills. His brother-in-law believes he can help Mr. Watkins obtain a job at Ford Motor Company. (See Exhibit 9, Support Letters) Another possibility for work would be continuing at a Unicor facility that is outside of Milan FCI.

His release as an inmate with a violent crime in his past would not be unique. In *United States v. Kelly,* No. 13-cr-59 (S.D. Miss 2020), Lemarkcus Kelly pled guilty to possession of a molatov cocktail and admitted in his plea that he shot into a building. Like Mr. Watkins, Kelly had no criminal history, he was employed, he had a wife and children. He also responded well to prison and rehabilitation, taking advantage of numerous educational and program opportunities. The court found that Kelly no longer posed a threat to the community, and granted his motion for compassionate release.

In *United States v. Ladson,* ECF 262-64, 04-697-01 (E.D. Penn 2020), the Court granted Mr. Ladson compassionate release despite the violent nature of his crime and criminal past. Mr. Ladson was incarcerated for armed robbery of a jewelry store. Further, he was a career offender with a history of jewelry store robberies that accumulated in over 2 million dollars in losses. *Ladson,* 04-697-01, ECF 263 (E.D. Penn 2020) Like Mr. Watkins, long-term incarceration jarred Mr. Ladson into the realization that he was throwing

away his life. The Ladson court went past Mr. Watkins criminal background, and reviewed his prison record and family connections to find he is no longer a threat to the community. In comparison, Mr. Watkins' criminal history and prison record indicate are more compelling proof that he is no longer a threat to the community.

In *United States v. Young,* 00-00002 (MD Tenn. 2020), Mr. Young presented a person who had led a law-abiding life until he began abusing narcotics. Like Mr. Watkins, he began robbing banks at gunpoint to fund his addiction. Rather, than accept responsibility through a plea, Mr. Young went to trial. The result was 92 years in prison. Because of his age, his status as a first offender, and a stellar record within the BOP, the Court acknowledged that Mr. Young was unlikely to commit any other crimes upon release and granted compassionate release. *Young,* 00-00002-01, ECF 109 (May 1, 2020) The Court should note Mr. Watkins is a first time offender as well, that he submitted himself to the discipline of the court, and as a person in his 40s, is unlikely to commit any other crimes. Like Mr. Young, his record in prison is free of infractions and indicates Mr. Watkins is rehabilitated.

Mr. Watkins has served over 60 percent of his sentence. This is not an effort to manipulate the judicial system. Rather, Mr. Watkins is asking that his sentence be reduced in light of his vulnerability to life-threatening consequences should he contract COVID-19. The concerns the government may have regarding the nature of the crime are outweighed by strong evidence that Mr. Watkins has not only rehabilitated himself, but also gained the trust of the Bureau of Prisons. With an entry plan and job prospects already in place, the Court can have confidence that Mr. Watkins use his freedom to raise his family and be a productive member of society.

## **CONCLUSION**

Without compassionate release, Mr. Watkins faces the very real possibility of a death sentence imposed by COVID-19. In this case, compassion from the Court is appropriate. Wherefore, Defendant Tyrone Watkins, requests that this Honorable Court grant his motion for compassionate release.

Respectfully Submitted,

**SMITH MIHAS PLLC**

/s/ Haralambos D. Mihas
Haralambos D. Mihas, P66417
Counsel for Tyrone Watkins
467 Eureka Road, Suite 1
Wyandotte, Michigan 48192
(734) 692-3033
hdmihas@smithmihas.com

## PROOF OF SERVICE

I, Haralambos D. Mihas, swear under penalty of perjury that I served the aforementioned brief to the court and all interested parties on June 30, 2020 through the Court's CM/ECF electronic filing system.

/s/   Haralambos D. Mihas
Haralambos D. Mihas, P66417
Attorney for Tyrone Watkins