UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                            Case Number 10-20545

v.                                                      Honorable David M. Lawson

TYRONE RICHARD WATKINS,

                Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Tyrone Watkins has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. He has served roughly half of his 20-year sentence for armed bank robbery and weapons offenses, and he has exhausted his administrative remedies. The government concedes that Watkins has exhausted his administrative remedies, but it argues that he has not shown extraordinary or compelling reasons for the relief he requests, and that applying the factors listed in 18 U.S.C. § 3553(a) militate against it. Watkins argues that his physical conditions render him especially vulnerable to complications from COVID-19, should he contract that disease, and that his confinement in the congregant environment of a prison poses an unreasonable risk. However, those circumstances do not demonstrate the extraordinary and compelling reasons necessary to justify immediate release or that the factors in section 3553(a) favor the relief he requests. Therefore, his motion will be denied.

I.

Watkins robbed five banks at gunpoint between July 10 and August 20, 2010. During the final robbery on August 20, Watkins fled the scene, leading police officers on a high-speed chase

until he crashed his car in a field by the highway. Police found stolen money, a pistol, and crack cocaine in his car. The federal grand jury charged Watkins with five counts of bank robbery, five counts of brandishing a firearm during and in relation to a crime of violence, one count of possessing a firearm as a convicted felon, and one count of possession of a controlled substance.

On May 2, 2011, Watkins pleaded guilty to all five bank robbery counts and one count of brandishing a firearm during and in relation to a crime of violence under a Rule 11 plea agreement. The Honorable Avern Cohn sentenced him in November 2011 to a total prison term of 240 months: concurrent terms of 156 months on each of the bank robbery counts and a consecutive term of 84 months on the brandishing conviction. Watkins's projected release date is September 17, 2027.

On May 13, 2020, Watkins sent a perfunctory request for compassionate release to the Bureau of Prisons (BOP). *See* ECF No. 59-1, PageID.427 ("Hello, my name is Tyrone Watkins and I'm currently requesting a compassionate release!"). The BOP responded the following day, asking him to clarify the grounds for his request. Watkins complied; on May 23, 2020, he sent the BOP a request for home confinement due to the health risks posed by the coronavirus pandemic, explaining that he has hypertension and completed "over 57%" of his sentence. He never received a response. He filed a motion for compassionate release with the Court on June 30, 2020.

Watkins explains that he is a 45-year-old African-American man. He describes himself in general "good health," but he identifies some ongoing health problems. He says that he is obese (263 pounds at 6'2"), has hypertension, and exhibits low potassium levels. He takes Amlodipine daily to control his blood pressure, which apparently is effective.

The defendant is imprisoned at FCI Milan in Milan, Michigan, one of the BOP facilities that has done a poor job of limiting the spread of the novel coronavirus. The facility currently houses 1,306 inmates. As of August 4, 2020, two inmates and one staff member were infected

with COVID-19, three inmates had died from COVID-19, and 98 inmates had been infected and recovered from the virus. *See* https://www.bop.gov/coronavirus/. According to a recent report, 55 staff have tested positive, 54 have recovered and returned to work, and one is pending recovery. The report does not disclose how many staff or inmates have been tested.

Watkins's criminal history includes a prior drug conviction that resulted in a sentence of less than 90 days. Before being incarcerated on this case, "[h]e had a job, a home, a wife and two small children," but "also had an addiction to crack cocaine that twisted his values and led to criminal actions." His contention that he has reformed himself in prison finds support in the record, and he describes himself as a model inmate. Watkins is classified as a minimum-security risk and is housed at a preferred unit in Milan. He works two jobs: Unicor, an onsite factory, and the suicide cadre, a corps of inmates who help prison psychologists identify and treat suicidal inmates. Watkins also completed a 40-hour drug abuse class, as well as 90 other courses; he is eligible to enroll in Milan's college program. He leads the prison choir, and his disciplinary record is spotless.

Watkins maintains that he has an "entry plan and job prospects" in place if he is released early, but his skeletal description states only that "he will return to his family and free society a changed man who can positively contribute to his family and society."

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of

Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Watkins relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government concedes that Watkins has exhausted his administrative remedies, but it disagrees with his argument that his medical predisposition to COVID-19 complications amounts to "extraordinary and compelling reasons" to justify a sentence reduction. It also argues against release because the factors in section 3553(a) do not favor it, nor do the Sentencing Commission's policy statements. It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of

dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Watkins has invoked section 3582(c)(1)(A)(i), which contains no such requirement.

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need … to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

The sentence in this case was driven not only by the mandatory minimum prison term required for individuals brandishing a firearm during a crime of violence, *see* 18 U.S.C. § 924(c)(1)(A)(ii), but also by the multiple armed bank robberies Watkins committed. The Court determined at the time that the sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a). One of the goals — protection of the public — was paramount in this case.

Watkins was convicted of five violent offenses (bank robbery) and a firearm offense (brandishing a firearm during and in relation to a crime of violence). The charged crimes are serious on paper (a federal bank robbery conviction can carry a sentence of up to 20 years, of 18 U.S.C. § 2113(a); a conviction of brandishing a firearm during and in relation to a crime of violence carries a mandatory minimum sentence of seven years, 18 U.S.C. § 924(c)(1)(A)(ii)), and the manner in which the crimes were committed were even more menacing. Watkins threatened bank tellers with a gun, causing them to fear for their lives.

Watkins has done well in a prison setting. He makes a convincing argument that he has turned away from his violent tendencies and drug addiction. The record lends support to his claims. The BOP classified him as a minimum-security risk, and he is housed at a preferred unit at FCI Milan. He has been given certain responsibilities and earned a measure of institutional trust. He leads the prison choir and his disciplinary record is spotless.

As commendable as Watkins's conduct in prison has been, it does not alter the historical fact that the Court undoubtedly imposed a sentence that was not greater than necessary to achieve congressional goals. Reducing that sentence by more than half would not promote respect for the law or provide a just punishment for Watkins's crimes. Nor would it serve as a significant deterrent to others. Consideration of the factors in 18 U.S.C. § 3553(a) does not favor a sentence reduction, but they are not disqualifying.

To establish extraordinary and compelling reasons for the relief he requests, Watkins points to the conditions of his physical health, arguing that he is vulnerable to complications if he were to contract COVID-19. And he is understandably concerned about being infected with the coronavirus. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It

presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

Watkins states that his comorbidities are obesity and hypertension. His medical records indicate that he was 74 inches tall and weighed 263 pounds on January 13, 2020, making his body mass index (BMI) about 34. *Id.* at PageID.776; *Adult BMI Calculator*, Centers for Disease Control and Prevention (July 6, 2020), https://bit.ly/2ZKLjqx (BMI 33.8 based on 74-inch height and weight of 263 lbs). Clinical obesity begins at a BMI of 30. *Defining Adult Obesity*, Centers for Disease Control & Prevention (June 30, 2020), https://bit.ly/2ZM2Z5q ("Class 1" obesity ranges from 30 to under 35 BMI). The CDC has listed obesity as a condition that is associated with complications from COVID-19.

Watkins also has high blood pressure, commonly referred to as hypertension. The government insists that "hypertension alone[] does not render a defendant eligible for compassionate release." It relies on the declaration of a Dr. John M. Flack, which apparently it pilfered from another lawsuit in a different district that has nothing to do with Watkins. There is no indication that Dr. Flack ever looked at Watkins's medical records or is even aware of this case. The declaration has little value here. Nonetheless, the government maintains that "the data

available" does not establish that primary hypertension alone causes a more severe outcome from COVID-19.

The CDC states that individuals with hypertension "*might* be at an increased risk for severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (emphasis added). Drilling down, though, that condition is grouped with "serious heart conditions" that predispose a person to higher risks of complications. Also included are "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension." *At Higher Risk for Severe Illness*, Centers for Disease Control and Prevention (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Although the CDC recognizes "pulmonary hypertension" as a serious heart condition that may put people at a higher risk of severe COVID-19-related complications, Watkins's medical condition does not include him in the high-risk designation. *See, e.g., Pulmonary Hypertension-High Blood Pressure in the Heart-to-Lung System*, American Heart Association, https://www.heart.org/en/health-topics/high-blood-pressure/the-facts-about-high-blood-pressure/pulmonary-hypertension-high-blood-pressure-in-the-heart-to-lung-system (last visited August 10, 2020) (comparing pulmonary and systemic blood pressure). Whether systemic hypertension, alone, exposes someone to heightened risk is unclear. *Compare Malam* ---F. Supp. 3d---, 2020 WL 2468481, at *7 (ordering supplemental briefing) *with Perez-Perez v. Adducci*, --- F. Supp. 3d ---, No. 20-10833, 2020 WL 2305276, at *3 (E.D. Mich. May 9, 2020) (granting petition for habeas corpus because defendant had hypertension and was housed in a facility with a confirmed case of COVID-19).

The defendant also points to his age as a factor. He is 45 years old. He acknowledges that his age does not meet the CDC guidelines (65 years old), but he argues that "'an inmate's

physiological age averages 10-15 years older than his or her chronological age,' due partly to the 'stresses associated with incarceration.'" But that observation, even if true, carries little weight in this discussion; Watkins has not explained how "psychological age" has any bearing on a predisposition to complications from a potential *physical* aliment. Moreover, even with that proposed 10-to-15-year "age increase" to account for his time in prison, his age does not satisfy the CDC's guidelines. *Lassister*, No. 17-232, 2020 WL 3639988, at *4 ("The risk factors include age (over 65)") (citing *People Who Are At Risk for Severe Illness, supra*).

That leaves with one risk factor to support his assertion that extraordinary and compelling reasons justify a sentence reduction. Is that enough? The common features of the recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic are either (1) properly exhausted claims that unreasonably were refused despite the existence of severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic, or (2) in cases where the defendants had severe medical conditions that placed them at high risk of coronavirus complications, were housed at a facility with confirmed cases, and had served a large majority of their sentences. *E.g., United States v. Reads*, No. 16-20827, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (ordering compassionate release of 33-year-old inmate with severe obesity, severe obstructive sleep apnea, hypertension, and "prediabetes"); *United States v. Saad*, No. 16-20197, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020) (ordering compassionate release of inmate who had served 33 months of a 72-month sentence for a non-violent drug offense, was 71 years old, and suffered from medical conditions including kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, diabetes, back problems, a frozen thigh from an overdose of coumadin given by prison officials, and who also had a history of heart surgery and knee replacement, and a recent diagnosis of

kidney cancer); *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948 (E.D. Mich. June 10, 2020) (ordering compassionate release of 65 year old defendant with a history of heart disease, severe asthma, benign prostate cancer, high blood pressure, type 2 diabetes, who served 69% of his sentence for a non-violent fraud offense, had only one minor disciplinary incident, and was housed at a facility with several confirmed COVID-19 cases); *United States of America v. Jajun Omar Gardner*, No. 14-CR-20735-001, 2020 WL 4200979, at *5 (E.D. Mich. July 22, 2020) (ordering compassionate release where defendant reported a number of serious medical issues, many of which the government did not dispute, including a history of hypertension, a heart condition, stage-two kidney disease, hyperlipidemia, lumbar disc disease, lumbar herniation, spinal cord impingement, an artificial knee joint, an artificial shoulder cup, and sickle cell trait). By comparison, Watkins's argument does not pass the extraordinary-and-compelling threshold. He is a relatively young man in good health housed in a preferred setting away from exposure to the known cases detected at FCI Milan.

None of this is to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons. But the pandemic is a global phenomenon and some risk is inherent no matter where Watkins resides, either at home or in prison. He asserts that his risk would be lower at home, but he has not put forth any convincing evidence to demonstrate that he is at an especially elevated risk of harm in the present situation of confinement. And Michigan has a significant number of confirmed COVID-19 cases. Watkins has not established extraordinary and compelling reasons based on his physical health, and when the factors in section 3553(a) are "considered," Watkins has not shown justification to reduce his sentence to time served.

However, looking at Watkins's performance over the last several years in prison, he ought to be given consideration by the BOP for placement in home confinement at the earliest appropriate date under the CARES Act, 18 U.S.C. § 12003(b)(2). The Court has no authority to order that relief. Section 12001(b)(2) is directed at the Attorney General. Under that section, "[d]esignation of an inmate's place of confinement, including placement in home confinement, rests within the absolute discretion of the BOP." *United States v. McCloskey*, No. 18-CR-260, 2020 WL 3078332, at *2 (S.D. Ga. June 9, 2020); *see also United States v. Calderon*, No. 1911445, 2020 WL 883084, at *1 (11th Cir. Feb. 24, 2020) (explaining that under 34 U.S.C. § 60541(g)(1)(A), the Attorney General "may" release eligible elderly offenders, and the district court was without jurisdiction to grant relief). And the Court's recommendation has no binding effect on the BOP. 18 U.S.C. § 3621(b). Nonetheless, the Court recommends that the BOP give careful consideration to placing Watkins in a community setting as soon as circumstances permit.

III.

Watkins has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 59) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  August 11, 2020

- 11 -