UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          Case Number 10-20545

v.                                             Honorable David M. Lawson

TYRONE RICHARD WATKINS,

        Defendant.

_____/

## ORDER DENYING SECOND MOTION TO REDUCE SENTENCE

Defendant Tyrone Watkins has filed a second motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. He has served a little more than half of his 20-year sentence for armed bank robbery and weapons offenses imposed by the Honorable Avern Cohn in 2011. The government argues that Watkins has not shown extraordinary or compelling reasons for the relief he requests, and that application of the factors listed in 18 U.S.C. § 3553(a) militates against it. Watkins argues that his physical condition has deteriorated since his last motion was denied, and that, although he is fully vaccinated against the novel coronavirus, he would be especially vulnerable to complications from COVID-19 if he suffered a breakthrough infection in the congregant environment of a prison. However, those circumstances do not demonstrate the extraordinary and compelling reasons necessary to justify immediate release. Because the Sixth Circuit has all but held that the availability of the COVID vaccine undercuts a prisoner's attempt to show extraordinary and compelling reasons for a sentence reduction based on the pandemic, *see United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021), his motion to reduce his sentence will be denied.

I.

As recounted in the order denying the last motion to reduce the sentence, Watkins robbed five banks at gunpoint between July 10 and August 20, 2010. During the final robbery on August 20, Watkins fled the scene, leading police officers on a high-speed chase until he crashed his car in a field by the highway. Police found stolen money, a pistol, and crack cocaine in his car. The grand jury charged Watkins with multiple robbery and firearms offenses. On May 2, 2011, Watkins pleaded guilty to five bank robbery counts and one count of brandishing a firearm during and in relation to a crime of violence. Judge Cohn sentenced him in November 2011 to a total prison terms totaling 240 months. Watkins's projected release date is September 17, 2027. He is 46 years old.

Watkins presently is confined at FCI Milan in Milan, Michigan, which is a medium security facility that houses 1,426 inmates. As of November 8, 2021, no inmates and two staff members were infected with COVID-19, three inmates had died from COVID-19, and 225 inmates had been infected and recovered from the virus. Additionally, 958 inmates (including Watkins) and 179 staff members have been vaccinated.

Watkins filed an earlier motion for compassionate release in June 2020 after his request to the warden for relief was denied. The Court denied the motion because Watkins could not demonstrate the extraordinary and compelling reasons necessary to justify immediate release or that the factors in section 3553(a) favor the relief he requested. Watkins submitted another application for compassionate release to the warden; the BOP responded that it would not process the request, having already denied his earlier one. Watkins then filed his second motion for compassionate release in the Court.

In the latest motion, Watkins reminds the Court that he is obese (263 pounds at 6'2"), has hypertension, and suffers from kidney disease. In addition, he alleges that his health has deteriorated significantly since he last moved for compassionate release. His medical records indicate that he received abnormal test results last October, was taken to the emergency room, and exhibited high CK levels and a low white blood cell count. Emergency Eval., ECF No. 77, PageID.1138-44. However, specialists conducted further testing and his vital signs quickly improved without intervention, indicating that some of his symptoms were caused by intense exercise. *Id.* at PageID.1154-58. Watkins nevertheless maintains that he exhibits symptoms of undiagnosed leukemia or lymphoma. Mot. Compassionate Release, ECF No. 77, PageID.1103-04. He takes Amlodipine daily to control his blood pressure; other blood control medication has been prescribed over the past year and discontinued, either because his hypertension improved or because he refused to take the medication as prescribed. Med. Records, ECF No. 84-1, PageID.1207, 1216, 1218. He has had at least 13 medical assessments since March 2021, *id.* at PageID.1240, and has received two doses of the Pfizer COVID-19 vaccine, but has not yet received a booster dose, *id.* at PageID.1250; Mot. Compassionate Release, ECF No. 77, PageID.1108.

Watkins contends that he has reformed himself in prison. He is classified as a minimum-security risk and is housed at a preferred unit. He works two jobs: one in the prison factory, and another in the suicide cadre, a corps of inmates who help prison psychologists identify and treat suicidal inmates. Watkins also has completed 90 rehabilitation programs, including non-residential drug treatment, and has tutored other inmates working toward their GEDs.

If released, Watkins plans to return to live with his wife and children in Detroit and continue to attend Narcotics Anonymous meetings. His brother-in-law works at Ford Motor

Company, and Watkins states that he believes he can also find a job there or at Lipari Packing Company, where is cousin is employed.

II.

The basic law that applies to COVID-related compassionate release motions has not changed much since Watkins's first motion to reduce his sentence was denied. Generally, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a)' . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Watkins again relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."

*United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.* However,

the defendant still must satisfy the other two requirements, and his "failure to meet any one of those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied. The government contends, however, that the defendant cannot demonstrate extraordinary or compelling reasons justifying immediate release, and that the factors in 18 U.S.C. §3553(a) do not favor immediate release.

B.

Addressing the first element — extraordinary and compelling reasons — Watkins contends that he suffers from a heightened risk of developing severe complications from COVID-19 because he is obese, immunocompromised, anemic, and suffers from hypertension, kidney disease, and liver disease. He emphasizes his undiagnosed immunodeficiency disorder, which he argues will prevent him from developing immunity despite receiving the COVID-19 vaccine.

The defendant is justifiably concerned about the health risks posed by his incarceration in this pandemic era due to the highly infectious and easily transmissible COVID-19 virus. *See Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). To make matters worse, the CDC advised the "Delta variant [is] more infectious and [is] leading to increased transmissibility when compared to other variants, even in some vaccinated individuals." *Delta Variant*, Ctrs. for Disease Control & Prevention (Aug. 26, 2021), https://perma.cc/CQZ7-R7BJ.

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in

the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020) (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain personal characteristics face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19); *People With Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (Oct. 14, 2021), https://perma.cc/577T-HCSJ. Thus, in *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release where other medical issues put him at risk of contracting the virus. 980 F.3d at 1102, n.6.

For Watkins, however, besides obesity and hypertension, there is little to no evidence that he has any of the medical conditions he says he does. *See Lemons*, 15 F.4th at 750 ("From the record, the severity of [the inmate's] condition and its associated risks are less than clear.") Both his prison medical records and the medical records he attached to his motion indicate that his estimated glomerular filtration rate, a standard measure of kidney health, was in a normal range. *See Estimated Glomerular Filtration Rate (eGRF)*, Nat'l Kidney Found. (Sept. 23, 2021), https://perma.cc/ELK3-ZZNH; Medical Records, ECF No. 84-1, PageID.1257; Emergency Eval., ECF No. 77, PageID.1168, 1173. He screened negative for hepatitis. *Id.* at PageID.1152-53. And while Watkins's white blood cell count was low in a blood test taken a year ago, *id.* at PageID.1141, there is no indication that this remains the case in any of the more than a dozen

health assessments Watkins has received thus far this year. His medical records do not otherwise suggest that he is immunocompromised, or that the vaccine will not confer him any immunity to COVID-19.

The degree of the vaccine's efficacy is relevant to the probability of whether the defendant might contract an infection from the coronavirus in his present situation and, in turn, whether extraordinary and compelling circumstances warrant an inmate's immediate release. In this case, that probability appears to be remote. Recent reports indicate that the probability of infection at FCI Milan, although once relatively high, now is very low, with no active cases among inmates and only two among staff. Further, even as the incidence of infection at Milan has declined, the probability of a future severe outbreak also has been diminished by the BOP's rapid and robust deployment of newly available vaccines, which so far have been administered fully to 958 inmates and 179 staff members at the prison. The likelihood of a severe outbreak only further will diminish as the vaccination program proceeds, and federal courts have acknowledged that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk. *United States v. Grummer*, 519 F. Supp. 3d 760, 763 (S.D. Cal. 2021) (collecting cases).

Watkins himself received two doses of the Pfizer vaccine in May and June 2021. Medical Records, ECF No. 84-1, PageID.1250. He will be eligible to receive a third dose in December. *COVID-19 Vaccine Guidance*, Fed. Bureau of Prisons, at 5-6 (Oct. 13, 2021), https://perma.cc/N2RU-4HC9. Although vaccinations may not provide perfect protection from COVID-19, especially against the Delta variant, they are among the best-known methods of preventing infection. *Interim Public Health Recommendations for Fully Vaccinated People*, Ctrs. for Disease Control & Prevention (Oct. 15, 2021), https://perma.cc/W697-8DUP ("COVID-19 vaccines are safe and effective at preventing infection, hospitalization, and death."); *COVID-19*

*Vaccines Work*, Ctrs. for Disease Control & Prevention (Aug. 16, 2021), https://perma.cc/A7XA-RLM2 (recognizing that "no vaccines are 100% effective," but observing that vaccines are "effective at keeping people from getting COVID-19, getting very sick, and dying" in "real-world conditions."). The CDC estimates that the Pfizer vaccine is 95 percent effective at preventing COVID-19 in people who receive two doses. *Pfizer-BioNTech COVID-19 Vaccine Overview and Safety*, Ctrs. for Disease Control & Prevention (Oct. 28, 2021), https://perma.cc/C6NT-G538. And although the Delta variant may be more infectious, the CDC noted that "[v]accines continue to reduce a person's risk of contracting the virus that causes COVID-19, including this variant," "are effective at preventing most infections," and are "highly effective against severe illness" caused by the variant. *What You Need to Know about Variants*, Ctrs. for Disease Control & Prevention (Nov. 1, 2021), https://perma.cc/8VWK-7Q5W.

All of that has prompted the Sixth Circuit to hold that "a defendant's incarceration during the COVID-19 pandemic — when the defendant has access to the COVID-19 vaccine — does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *Lemons*, 15 F.4th at 751 (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). Although "a prisoner who is 'unable to receive or benefit from a vaccine' may still be able to show 'extraordinary and compelling reasons' warranting a sentence reduction," Watkins has not made that showing here. *Ibid.*

The near-zero cases at FCI Milan, in combination with the facts that Watkins received both doses of the Pfizer vaccine and will soon be eligible for a third, undermine a finding that extraordinary and compelling reasons exist for his early release.

C.

Because the defendant has not demonstrated extraordinary and compelling reasons to reduce his sentence, the Court need not discuss the relevant section 3553(a) factors. *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021).

III.

Watkins has exhausted his administrative remedies. However, again, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's second motion for compassionate release (ECF No. 77) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 10, 2021