UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                             Case Number 10-20545

v.                                              Honorable David M. Lawson

TYRONE RICHARD WATKINS,

        Defendant.

_____/

## ORDER GRANTING IN PART SECOND MOTION TO REDUCE SENTENCE

Defendant Tyrone Watkins has filed a second motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. The Honorable Avern Cohn had sentenced Watkins in 2011 to 20 years in custody for armed bank robbery and weapons offenses. The Court denied Watkins' motion on November 10, 2021 after finding that he had not demonstrated the extraordinary and compelling reasons necessary to justify immediate release, based entirely on his medical conditions. However, the Court had given Watkins until November 17, 2021 to file a reply brief, and because the Court jumped the gun with its November 10 order, the Court vacated it. Watkins has filed his reply brief, and since the earlier order was entered, the Sixth Circuit has decided more cases on what can be considered when deciding if extraordinary and compelling reasons exist within the meaning of section 3582(c)(1)(A)(i). In light of those decisions, Watkins has shown that his sentence should be reduced, although not to time served.

I.

As explained in the now-vacated order, Watkins robbed five banks at gunpoint in 2010 and pleaded guilty to five bank robbery counts and one count of brandishing a firearm during a crime

of violence. Initially, he was charged with the five counts of bank robbery, plus five counts of brandishing a firearm during and in relation to a crime of violence, in addition to one count of unlawful possession of a firearm by a felon and one count of possession of a controlled substance. To avoid successive 25-year sentences then mandated under 18 U.S.C. § 924(c)'s enhanced stacking provisions, he entered a Rule 11 plea agreement and pleaded guilty to the five bank robbery counts and only one firearm count. If he were convicted of all the charges, Watkins faced a mandatory sentence of 107 years in prison. To avoid that harsh result, the government required as part of the plea agreement that Watkins agree to an upward variance from his sentencing guideline range and a sentence of 20 years.

The presentence report accurately calculated the offense level at 30 and his criminal history as category I, resulting in a guideline range of 97 to 121 months for the bank robberies. When the 84-month consecutive sentence for the firearm charge was figured in, the range became 181 to 205 months.

Judge Cohn reluctantly accepted the plea agreement and sentenced Watkins to 240 months in prison. However, he sharply criticized the terms of the plea agreement at sentencing, stating:

> I must observe that the agreement that's been made between the government and the defendant has stripped the Court of any discretion it has in sentencing and is an example of the control that the United States Attorney's Office wields over sentencing, and in the eyes of this Court it is highly inappropriate. . . .
>
> The harshness of the Court's comments earlier about the 240 months is because, as I read this presentence report, it is entirely possible — it would have been possible, I don't say for sure, that the Court would have decided that the upward variance was not appropriate, and there are other factors that are buried in the Presentence Report which suggest that more careful consideration could have been given to your character, your history, your background and the things that you did, but the way this sentence was structured the Court can play no part in it.

Sentencing Tr., ECF No. 26, PageID.101, 105.  He refused to make a record on the 3553(a) factors because he believed they were "completely distorted by the government's approach to the case." *Id.* at PageID.107.

Four of the five bank robberies were remarkably similar: Watkins confronted a teller and asked for money, he raised his shirt to display a pistol in his waistband, and he took cash and fled in a vehicle.  In the fifth robbery, when Watkins fled the scene, he led police officers on a high-speed chase until he crashed his car in a field by the highway.  Police found stolen money, a pistol, and crack cocaine in his car.

Watkins presently is confined at FCI Milan in Milan, Michigan, which is a medium security facility that houses 1,426 inmates.  The Bureau of Prisons reports a history of COVID-19 infections among inmates and staff.  However, Watkins has received at least two doses of the COVID vaccine.

Watkins filed an earlier motion for compassionate release in June 2020 after his request to the warden for relief was denied.  As noted earlier, the Court denied the motion because Watkins could not demonstrate the extraordinary and compelling reasons necessary to justify immediate release or that the factors in section 3553(a) favor the relief he requested.  Watkins submitted another application for compassionate release to the warden; the BOP responded that it would not process the request, having already denied his earlier one.  Watkins then filed his second motion for compassionate release.

In the latest motion, Watkins reminds the Court that he is obese (263 pounds at 6'2"), has hypertension, and suffers from kidney disease.  In addition, he alleges that his health has deteriorated significantly since he last moved for compassionate release.  His medical records indicate that he received abnormal test results last October, was taken to the emergency room, and

exhibited high CK levels and a low white blood cell count. Emergency Eval., ECF No. 77, PageID.1138-44. However, specialists conducted further testing and his vital signs quickly improved without intervention, indicating that some of his symptoms were caused by intense exercise. *Id.* at PageID.1154-58. Watkins nevertheless maintains that he exhibits symptoms of undiagnosed leukemia or lymphoma. Mot. Compassionate Release, ECF No. 77, PageID.1103-04. He takes Amlodipine daily to control his blood pressure; other blood control medication has been prescribed over the past year and discontinued, either because his hypertension improved or because he refused to take the medication as prescribed. Med. Records, ECF No. 84-1, PageID.1207, 1216, 1218. He has had at least 13 medical assessments since March 2021, *id.* at PageID.1240, and has received two doses of the Pfizer COVID-19 vaccine, but has not yet received a booster dose as of the motion filing date, *id.* at PageID.1250; Mot. Compassionate Release, ECF No. 77, PageID.1108.

Watkins contends that he has reformed himself in prison. He is classified as a minimum-security risk and is housed at a preferred unit. He works two jobs: one in the prison factory, and another in the suicide cadre, a corps of inmates who help prison psychologists identify and treat suicidal inmates. Watkins also has completed 90 rehabilitation programs, including non-residential drug treatment, and has tutored other inmates working toward their GEDs.

If released, Watkins plans to return to live with his wife and children in Detroit and continue to attend Narcotics Anonymous meetings. His brother-in-law works at Ford Motor Company, and Watkins states that he believes he can also find a job there or at Lipari Packing Company, where his cousin is employed.

II.

The basic law that applies to COVID-related compassionate release motions has not changed much since Watkins's first motion to reduce his sentence was denied. Generally, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Watkins again relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.* However, the defendant still must satisfy the other two requirements, and his "failure to meet any one of

those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied. The government contends, however, that the defendant cannot demonstrate extraordinary or compelling reasons justifying immediate release, and that the factors in 18 U.S.C. §3553(a) do not favor immediate release.

B.

Addressing the first element — extraordinary and compelling reasons — Watkins does not argue that the First Step Act's amendment to section 924(c)'s enhanced mandatory sentence stacking provisions provides an extraordinary and compelling reason for a sentence reduction. Rather, he argues that COVID-19 provides extraordinary and compelling reasons, and that the First Step Act is a factor the Court should weigh in determining whether the section 3553(a) factors favor release. As the Court reasoned in its vacated order, the Sixth Circuit has all but held that the availability of the COVID vaccine undercuts a prisoner's attempt to show extraordinary and compelling reasons for a sentence reduction based on the pandemic. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). However, even since Watkins filed his reply, the court of appeals has issued rulings that require the Court to consider whether Watkins' stacking argument, together with his remarkable rehabilitation and the pandemic, provide extraordinary and compelling reasons for such relief. *See United States v. McCall*, --- F.4th ---, 2021 WL 5984403, at *6 (6th Cir. Dec. 17, 2021).

In *McCall*, the court of appeals clarified that "a court may consider a nonretroactive change in the law as one of several factors forming extraordinary and compelling circumstances qualifying

for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)." The court went so far as to say that a district court abuses its discretion when it fails to consider whether the combination of the COVID-19 pandemic, rehabilitation efforts, and a nonretroactive change in sentencing law constitute extraordinary and compelling circumstances warranting a prisoner's compassionate release. *Id.* at *1, 9.

We have observed on other occasions that the Sixth Circuit "has not traced a consistent path when dealing with" the impact of the non-retroactive sentencing reforms on compassionate release motions. *United States v. Davenport*, No. 91-81019, 2021 WL 3489707, at *2 (E.D. Mich. Aug. 9, 2021). In *United States v. Owens*, 996 F.3d 755, 763 (6th Cir. 2021), the court of appeals held that, "in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, *along with other factors*, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied" (emphasis added). Shortly thereafter, different panels published conflicting opinions in *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021) and *United States v. Hunter*, 12 F.4th 555, 563 (6th Cir. 2021), which held that courts may not treat non-retroactive amendments in the First Step Act as extraordinary and compelling explanation for a sentence reduction. Instead, the Sixth Circuit held that non-retroactive amendments, including changes to section 924(c)'s stacking provisions, only may be considered when balancing the section 3553(a) factors upon a showing of "some other" extraordinary and compelling reason for a sentence reduction. *Jarvis*, 999 F.3d at 763.

Considering this "intra-circuit split," the *McCall* court explained that *Owens* controls. *McCall*, 2021 WL 5984403, at *5. The court of appeals reasoned that, "[b]ecause *Owens* was published before *Jarvis*, *Owens* 'remains controlling authority' that binds future panels." *Ibid.*

(citing *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). Thus, "[f]aced with the conflict between *Owens* and *Jarvis*, courts 'must follow' . . . *Owens*" and consider non-retroactive changes in the law as one of several factors warranting compassionate release. *Ibid.*

Here, Watkins' sentence did not actually involve section 924(c) stacking, because he pleaded guilty to only one violation of that statute. His plea agreement and sentence undoubtedly were influenced by stacking, however. He was charged with five counts under section 924(c), four of which were dismissed pursuant to his Rule 11 agreement. If Watkins had proceeded to trial and been convicted on all counts, he would have faced additional, consecutive 25-year mandatory minimum sentences on four of the five counts. *See United States v. Potter*, 2021 WL 3276152, at *3 (E.D. Tenn. July 30, 2021) (considering a similar argument that changes to section 924(c) constituted extraordinary and compelling reasons for relief). It is abundantly clear that Watkins entered an unduly harsh Rule 11 plea agreement to avoid an even harsher result under section 924(c). Courts have considered similar arguments when weighing compassionate release motions from defendants who entered Rule 11 agreements, although many, but not all, have not found them convincing absent a showing of other reasons for a sentence reduction. *See, e.g., ibid.* (denying relief because other factors like rehabilitation and a generalized fear of COVID-19 did not favor it); *United States v. Gaines*, 2021 WL 4492855, at *5 (W.D. Ky. Sept. 30, 2021) (applying *Jarvis* to bar relief); *United States v. Velazquez*, 2021 WL 2946404, at *3 (S.D. Ohio July 14, 2021) (denying relief because plea agreement resulted in significantly reduced sentence); *United States v. Bolden*, 2021 WL 2228060, at *6 (W.D. Ky. June 1, 2021) (finding extraordinary and compelling reasons for relief due to a combination of the First Step Act amendments and the defendant's youth at the time of the offense, rehabilitation, and remarkably harsh sentence); *United*

*States v. Small*, 2021 WL 2168935, at *3 (D. Utah May 27, 2021) (denying relief because other factors like COVID-19 and youth at time of offense did not favor it).

Here, Watkins has offered significant rehabilitative evidence that, under *Owens*, must be considered alongside the First Step Act's changes to mandatory sentencing for firearms charges in considering whether extraordinary and compelling reasons exist for relief. *Owens*, 996 F.3d at 764. He has turned away from his violent tendencies and overcome his drug addiction. The BOP classifies him as a minimum-security risk, and he is housed at a preferred unit at FCI Milan. He works two jobs and has been given certain responsibilities and earned a measure of institutional trust. He leads the prison choir, and his disciplinary record is spotless. And he recognized the severity of his actions and expressed sincere remorse.

Watkins argues that the harshness of his sentence and the extent of his rehabilitation together support at least a partial reduction in his sentence. Because the government used the specter of stacked mandatory minimum sentences to compel Watkins to plead to an upwardly revised sentence range, and, as Judge Cohn found, inappropriately encroached on the Court's sentencing discretion, and because Watkins's conduct in prison has been commendable, this case falls outside the mine run of compassionate release requests based exclusively on claims of rehabilitation and remorse. The constellation of facts discussed above, viewed through the Sixth Circuit's latest pronouncements in *Owens* and *McCall*, convincingly demonstrate extraordinary and compelling reasons exist within the meaning of 18 U.S.C. § 3582(c)(1)(A)(i).

C.

Although the defendant has made a satisfactory showing of extraordinary and compelling reasons under section 3582(c)(1)(A)(i), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a).

There is no requirement that the prisoner must establish a lack of dangerousness, as is the case for compassionate release applications made by the BOP. *See* U.S.S.G. § 1B1.13; *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."); *Elias*, 984 F.3d at 519-20 (same).

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and concerns about "afford[ing] adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently compelling to justify a sentence reduction.

The court of appeals has held that the Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed "to remain [] an accurate assessment as to whether those factors justify a sentence reduction." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021). In this case, however, Judge Cohn did not evaluate those factors. He only noted that "there are other factors that are buried in the Presentence Report which suggest that more careful consideration could have been given to your character, your history, your background and the things that you did." Sentencing Tr., ECF No. 26, PageID.105. All of those items are included in the section 3553(a) factors.

Foremost among those factors, of course, is the applicable sentencing guideline range. 18 U.S.C. § 3553(a)(4)(A). The probation department calculated that range for all counts of conviction at 181 to 205 months. The offenses themselves were quite serious: the defendant robbed five banks, displayed a gun, and led the police on a dangerous chase following the fifth robbery. Those factors, however, were accounted for in the guideline range calculation. He was given level increases for brandishing the gun in each robbery, plus an increase for obstruction of justice as a result of his flight from police.

Watkins's history suggests that he was raised by divorced parents and suffered a childhood trauma when his home was destroyed by fire and he witnessed his great-uncle and godfather consumed in the blaze. He struggled in school, although he finished high school and tried some community college classes with no success. His criminal record consists of a drug conviction for which he received probation and a couple of misdemeanor convictions for disorderly conduct. Before this case, his longest jail sentence was three days.

An appropriate sentence must provide adequate deterrence and protect the public. But those factors must be evaluated in light of the parsimony mandate of imposing a sentence that is "sufficient, but not greater than necessary," to achieve the statutory goals. 18 U.S.C. § 3553(a); *United States v. Thompson*, 515 F.3d 556, 560 (6th Cir. 2008) ("Pursuant to the so-called parsimony provision of 18 U.S.C. § 3553(a), a district court must 'impose a sentence sufficient, but not greater than necessary, to comply with the purposes' of § 3553(a)(2)."). And when considering those factors at this stage of the case, "evidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.'" *Pepper v. United States*, 562 U.S. 476, 491 (2011). "Several courts have . . .

considered a defendant's rehabilitation in granting compassionate release." *United States v. Parker*, 461 F. Supp. 3d 966, 982 (C.D. Cal. May 21, 2020) (citations omitted).

Watkins's efforts at rehabilitation are recounted above; they evidence a changed man who poses little risk to the public. Judge Cohn's displeasure with the 240-month sentence is quite understandable now, in retrospect, with Watkins's post-sentence conduct well documented. The sentence must "promote respect for the law," 18 U.S.C. § 3553(a)(2)(A); a sentence that is too harsh undermines that goal as much as a sentence that is too lenient. In light of all the factors, wiping out the rest of Watkins's prison sentence to time served may overstate the proper measure of relief. But reducing his sentence to 181 months, which was the bottom of his guideline range at sentencing before application of the upward variance, is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that "in any case" the court "may *reduce* the term of imprisonment" if it finds that "extraordinary and compelling reasons warrant such a reduction") (emphasis added); *United States v. McDonel*, 513 F. Supp. 3d 752, 760 (E.D. Mich. 2021) (citing *United States v. Maumau*, 2020 WL 806121, at *8 (D. Utah Feb. 18, 2020), *aff'd*, 993 F.3d 821 (10th Cir. 2021)).

### III.

Watkins has exhausted his administrative remedies. He has now demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's second motion for compassionate release (ECF No. 77) is **GRANTED IN PART**.

It is further **ORDERED** that the defendant's term of custody is **REDUCED** to a total of 181 months as follows: 97 months on counts 1, 3, 5, 7, and 9 of the indictment to run concurrently with each other; and 84 months on count 2 of the indictment, to run consecutively with the sentences on the other counts.

It is further **ORDERED** that all the non-custodial provisions of the original judgment and commitment are re-imposed.

It is further **ORDERED** that the defendant must provide to the probation office in the district where he will be released the complete address where he will reside upon release.

It is further **ORDERED** that an amended judgment and commitment will enter.

It is further **ORDERED** that the defendant's motion for leave to file supplemental authority in support of his motion for compassionate release (ECF No. 90) is **DENIED AS MOOT**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   January 12, 2022